IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF/RESPONDENT

VS.                        CASE NO. 2:17-cr-20024-PKH-MEF-3

JOSE ALONSO GARCIA                                      DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant/Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody filed on September 22, 2021.[1] (ECF

No. 160).   Defendant/Movant simultaneously filed an Affidavit (ECF No. 162) and a

Memorandum of Law (ECF No. 163) in support of his § 2255 motion.   The United States filed its

response on October 27, 2021.  (ECF No. 165).  Defendant/Movant filed a reply on November 15,

2021 (ECF No. 168) and, with leave of Court, he filed a Supplement (ECF No. 169) on January

10, 2022.  As Defendant/Movant's Supplement raised a ground for relief not previously stated, the

United States was directed to file a response (ECF No. 171), and it did so on February 8, 2022.

(ECF No. 172).  The matter is ready for report and recommendation.

### I.      BACKGROUND

On October 25, 2017, Defendant/Movant, Jose Alonso Garcia ("Garcia"), was named in

an Indictment charging him with two drug trafficking offenses: Count One, conspiracy to distribute

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and Count Three, aiding and

abetting in the distribution of five grams or more of methamphetamine, in violation of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(B)(viii) and 18 U.S.C. § 2.  (ECF No. 1).  Garcia was arrested in Little

---

[1] The motion was received and docketed on September 27, 2021, but Garcia declared under penalty of perjury that he
placed the motion in the prison mailing system on September 22, 2021, so by virtue of the "prison mailbox rule" it is
considered filed on that date.  Rule 3(d) of the Rules Governing Section 2255 Proceedings.

Rock, Arkansas on November 8, 2017 (ECF No. 33), and he appeared for arraignment on November 14, 2017, at which time he entered a not guilty plea to the Indictment.  (ECF No. 26).  Patrick F. Flake ("Flake"), a CJA Panel attorney, was appointed to represent Garcia.  (ECF Nos. 26, 30).  Garcia waived the issue of detention and was ordered detained, and the case was set for jury trial on January 8, 2018.  (ECF Nos. 28, 29).  Flake filed a Motion for Continuance (ECF No. 36) on December 29, 2017, and it was granted by Order (ECF No. 37) entered on January 2, 2018.  The jury trial was reset for February 12, 2018.

Flake filed a second Motion for Continuance (ECF No. 40) on January 29, 2018, which was denied by Order (ECF No. 41) entered on the same date.  Two days later, the jury trial setting was cancelled, and the case was scheduled for a change of plea hearing, initially to be held on February 8, 2018, then rescheduled on February 5, 2018.  (ECF Nos. 43, 44).

At the change of plea hearing on February 5, 2018, Garcia expressed dissatisfaction with Flake.  (ECF No. 150, pp. 4-5).  The Court took a brief recess to allow Garcia to confer with Flake.  *Id*. at 6-7.  At the conclusion of the recess, Flake advised the Court that he believed there was an irreconcilable conflict between Garcia and him, and the Court relieved Flake as counsel.  *Id*. at 7.  The jury trial was reset on March 5, 2018.  (ECF No. 49).  Russell A. Wood ("Wood"), a CJA Panel attorney, was appointed to represent Garcia.  (ECF No. 54).  Wood requested a continuance (ECF No. 64), which was granted (ECF No. 65), and the jury trial was reset on May 14, 2018.

On March 6, 2018, a Superseding Indictment was returned by the Grand Jury charging Garcia with one count of conspiracy to distribute methamphetamine (Count One), in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of aiding and abetting in the distribution of more than five grams of actual methamphetamine (Count Three), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), and 18 U.S.C. § 2.  (ECF No. 70).  Garcia was arraigned on the Superseding

Indictment on March 16, 2018, to which he entered a not guilty plea. (ECF No. 77). A jury trial remained set for May 14, 2018.

On March 28, 2018, Wood filed a Motion for Retesting of Drug Quantity and Quality and Motion for Approval of Expenditures (ECF No. 80), indicating that Garcia disputed the results of the DEA chemical analysis report. Garcia alleged that both the quantity and quality of the methamphetamine attributed to him were incorrect, and he referred to an in-court statement of his co-defendant, Jose Escalante, that the methamphetamine in the sample tested by the DEA was not as pure as the DEA analysis indicated. *Id*., ¶ 4. He requested that an independent lab be permitted to retest the methamphetamine. *Id*., ¶ 5. Finding that Garcia had not met even the minimal burden to state why the requested services were necessary, let alone demonstrate a reasonable probability that appointment of an expert was necessary to aid in his defense and prevent an unfair trial, the motion for retesting was denied in an Opinion and Order entered on April 12, 2018. (ECF No. 83).

On April 24, 2018, Garcia appeared with counsel before the Hon. P. K. Holmes, III, United States District Judge, for a change of plea hearing. A written Plea Agreement was presented to the Court, in which Garcia agreed to plead guilty to Count Three of the Superseding Indictment charging him with aiding and abetting the distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), and 18 U.S.C. § 2. (ECF No. 98, ¶ 1). The Plea Agreement also provided that Garcia's guilty plea was a conditional plea, with Garcia reserving the right to appeal the Court's denial of his Motion for Retesting of Drug Quantity and Quality and Motion for Approval of Expenditures. *Id*., ¶ 2. The Court determined that Garcia's conditional guilty plea was voluntary and supported by an independent factual basis, his guilty plea was accepted, and the Court deferred approval of the Plea Agreement pending completion of

a presentence report.  (ECF Nos. 97, 151).

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on June 22, 2018.  (ECF No. 110).  The Government had no objections to the initial PSR.  (ECF No. 117).  Garcia made several objections to the initial PSR, including: the quantity of methamphetamine attributed to him and the corresponding base offense level; that he was not given a reduction as a minor or minimal participant; that the career offender enhancement, based upon his convictions reported in paragraphs 55 and 57, was improper; that he was not under a criminal justice sentence at the time of the instant offense; that his conviction reported in paragraph 51 was more than 15 years prior to the instant offense, and three criminal history points should not have been assessed on that conviction; that he never handed the ounce of suspected methamphetamine to the UC as reported in paragraph 25; that no substance was ever obtained from him, as reported in paragraph 27, and the methamphetamine was not 97% pure and 53.789 grams of actual methamphetamine; that he is not a career offender; and that the Sentencing Guidelines are "unreasonable and unconstitutionally excessive."  (ECF No. 120).

In an Addendum responding to Garcia's objections, the Probation Officer noted that paragraphs 55 and 57 were inaccurately listed in paragraph 41, and that the correct paragraphs supporting Garcia's status as a career offender are paragraphs 56 and 58, and paragraph 41 was revised to reflect this correction.  (ECF No. 121-1, p. 2).  A similar correction was made regarding paragraph 55 (the correct paragraph reference being 56), with paragraph 65 being updated to reflect the correction, but the Probation Officer noted that the correction did not change Garcia's status as being under a criminal justice sentence at the time of the instant offense.  *Id*.  The Probation Officer clarified paragraph 25 to reflect that it was co-defendant Escalante, not Garcia, who handed the one ounce of methamphetamine to the UC but noted that Garcia was present during a controlled

purchase on May 19, 2016. *Id*. at 3-4. No other changes affecting the guidelines calculation were made.

A final PSR was submitted to the Court on August 1, 2018. (ECF No. 121). The PSR determined that Garcia was accountable for 53.789 grams of actual methamphetamine sold to the UC on May 19, 2016. (ECF No. 121, ¶¶ 27, 30). Based on that drug quantity, Garcia's base offense level was determined to be 30. *Id*., ¶ 35. A four-level Chapter Four enhancement was assessed as Garcia was found to be a career offender. *Id*., ¶ 41. A three-level reduction for acceptance of responsibility was given. *Id*., ¶¶ 42, 43. Garcia's total offense level was determined to be 31. *Id*., ¶ 44. Garcia's prior convictions resulted in a criminal history score of 23, but two additional points were assessed because he was under a criminal justice sentence at the time of the instant offense, resulting in a total criminal history score of 25, placing him in criminal history category VI. *Id*., ¶¶ 64-66. Criminal history category VI also applied as Garcia was determined to be a career offender. *Id*., ¶ 67. The mandatory minimum term of imprisonment on the count of conviction was five years, with the statutory maximum being 40 years imprisonment. *Id*., ¶ 97. Based upon a total offense level of 31 and a criminal history category of VI, Garcia's advisory guidelines imprisonment range was reported to be 188 to 235 months. *Id*., ¶ 98.

In a Sentencing Memorandum (ECF No. 124) filed on August 26, 2018, Garcia argued the career offender enhancement was improper for three reasons: (1) his current offense, aiding and abetting possession with intent to distribute, was not a "controlled substance offense" due to the inchoate nature of the offense; (2) his prior conviction for accomplice to battery in the second degree was not a "crime of violence," again due to the inchoate nature of the offense; and (3), alternatively, application of the career offender enhancement would overstate the seriousness of his criminal record, his risk of reoffending, and his culpability in relation to the instance offense.

*Id*. at 4-10.  Garcia further argued that he was entitled to a reduction of offense level pursuant to U.S.S.G. § 3B1.2 because he was a minimal or minor participant.  *Id*. at 10-14.  He argued for a downward variance, restating his position on drug quantity and role in the offense; to avoid an unwarranted sentencing disparity with his co-defendant, Escalante; and based on his family circumstances.  *Id*. at 14-17.  He renewed his objection and dispute regarding the drug quantity and purity attributed to him.  *Id*. at 17-18.  He disputed his criminal history score, arguing that one of his prior convictions was more than 15 years old at the time of the instant offense.  *Id*. at 18-19. Finally, he requested that his federal sentence be ordered to run concurrently with the state court sentence he was serving.  *Id*. at 19.

Garcia appeared with his counsel for sentencing on September 12, 2018.  (ECF Nos. 129, 152).  Upon inquiry by the Court, Garcia stated he was satisfied with his counsel.  (ECF No. 144, p. 4).  The Court determined that Garcia had an opportunity to read and discuss the PSR and revisions with his counsel.  *Id*. at 4-5.  The Court then addressed Garcia's objections to the PSR, beginning with Garcia's objection to the drug quantity attributed to him.  The Court overruled Garcia's objection regarding drug quantity, finding close temporal proximity between the two drug transactions involved, and that the drug quantity from the second transaction would come in as relevant conduct.  *Id*. at 5-8.

Concerning Garcia's objection to not receiving a reduction in offense level as a minimal or minor participant, the Government put forth the testimony of Mike Keene, a Special Agent with the Drug Enforcement Agency at the time of the instant offense.  (ECF No. 152, pp. 11-25).  SA Keene authenticated Government Exhibits 5 and 6, which were transcriptions of two Title III wiretap interceptions between Garcia and co-defendant Escalante on July 13, 2016.  SA Keene explained that these intercepted communications showed that Garcia and Escalante were working

jointly together getting narcotics from Mexico, and that Escalante had gotten behind with his payments to the source, which left Garcia feeling like he was out on a limb because he had introduced Escalante to the source (believed to be Garcia's brother).

SA Keene also testified to the purity of the drugs involved in the four controlled buys between an undercover agent and Escalante, including the one occasion when Garcia was present. (ECF No. 152, pp. 26-32). He stated that the purity among the four samples tested ranged from 96% to 99%, which he characterized as common in a high-level drug trafficking organization for someone that is "very close to the source of supply." On cross-examination, SA Keene acknowledged that despite Escalante's statement that he and Garcia were always together, the investigators did not always see them together over the course of the investigation. *Id*. at 37.

Garcia then testified regarding his relationship with Escalante. (ECF No. 152, pp. 41-45). He indicated that he met Escalante in an Arkansas prison in 2013; that he came to Arkansas and was together with Escalante infrequently, perhaps once a month; and that the intercepted phone calls did not concern drug trafficking activity, but instead, money that Escalante owed to Garcia's brother for two cars Escalante bought from Garcia's brother and concerning gifts Garcia wanted to send to his brother in Mexico. He denied any drug activity with Escalante other than the one undercover buy transaction on May 19, 2016, at the McDonald's parking lot.

In ruling on Garcia's role-in-the-offense objection, the Court noted that the determination is a fact-based determination, and the parties had presented abundant facts on the issue. (ECF No. 152, pp. 45-46). Addressing the five factors to be considered, the Court focused on the one transaction to which Garcia pled guilty, finding that Garcia understood the extent and scope of that particular distribution and participated in it, noting that he received the money from the transaction, that he went with Escalante to obtain another ounce of methamphetamine and returned 20 minutes

later and "fronted" it to the undercover agent, with Garcia stating that he expected to get paid for it.  While observing that Escalante "may have had a little bit more involvement in the transaction," the Court found the relative culpability of Escalante and Garcia to be "fairly comparable," and that there was insufficient evidence from which to conclude that Garcia was a minor or minimal participant in the transaction.  *Id*. at 46-49.

Turning to Garcia's objection regarding career offender status, the Court referred to the Guidelines and commentary, which provide that aiding and abetting in the commission of an offense has the same offense level as the underlying offense.  (ECF No. 152, pp. 49-50).  The Court also relied on Eighth Circuit precedent holding that the Guidelines consider a conviction for aiding and abetting in the commission of an offense to be a conviction for the underlying offense.  Upon such authority, the Court overruled Garcia's career offender objection as it related to the inchoate nature of the offense of conviction.  *Id*. at 50-51.

The Court next considered whether Garcia's prior Arkansas conviction for accomplice to battery in the second degree is a crime of violence.  (ECF No. 152, pp. 51-53).  Noting that the applicable statute, Ark. Code Ann. § 5-13-202, also includes as an element a mental intent of recklessness as opposed to a purposeful intent, the Court found that the statute is divisible, requiring the Court to use the modified categorical approach to determine whether Garcia's conviction involved purposeful intent as opposed to reckless intent.  Referring to Court Exhibit 1, a copy of the Felony Information related to that prior conviction, the Court observed that Garcia was charged with the intent element of purposeful conduct.  The Court concluded that Garcia's prior conviction for accomplice to battery in the second degree was, in fact, a crime of violence for career offender purposes.  The Court further ruled that accomplice liability would be treated the same as the underlying offense.  *Id*. at 54-55.

The final objection addressed by the Court was Garcia's claim that his prior conviction reported in paragraph 51 of the PSR, for possession of a controlled substance, did not occur within 15 years from the date of the instant offense. (ECF No. 152, pp. 53-54). Court Exhibit 2, a copy of the Judgment of Conviction, showed that the date of the Judgment was October 31, 2001. Since the instant offense occurred on May 19, 2016, the Court found that the prior conviction did occur within 15 years of the date of the instant offense conduct, and the objection was overruled.

The Court then summarized the statutory penalties and Guidelines range. (ECF No. 152, pp. 56-58). Following argument from counsel and a brief statement from Garcia, the Court acknowledged the § 3553(a) factors and found that a Guidelines sentence was appropriate. *Id*. at 61-62. The Court imposed a low-end Guidelines sentence of 188 months imprisonment, followed by five years of supervised release, no fine, no restitution, and a $100 special assessment. (ECF No. 129; ECF No. 152, pp. 62-64). Judgment was entered on September 13, 2018. (ECF No. 132).

Garcia appealed to the Eighth Circuit Court of Appeals. (ECF No. 137). He argued that the district court erred in denying his motion for retesting of drug quantity and quality, and in imposing his sentence. On the sentencing issues, he asserted that the district court erroneously sentenced him as a career offender, failed to apply a minimal or minor role in the offense reduction, and in imposing a substantively unreasonable sentence. (ECF No. 157-2, p. 2). In an Opinion and Judgment filed on December 26, 2019, the Eighth Circuit affirmed Garcia's conviction and sentence. (ECF Nos. 157-1, 157-2). The Mandate from the Eighth Circuit issued on March 20, 2020.[2] (ECF No. 157). Garcia then filed a Petition for a Writ of Certiorari in the United States

---

2 When no petition for rehearing is filed, a court of appeals' mandate issues 21 days after the entry of judgment. See Fed. Rules App. Proc. 40(a)(1) and 41(b). Here, as reflected in the Eighth Circuit's docket report, Case No. 18-3040, Garcia filed a combined Petition for En Banc and Panel Rehearing on February 7, 2020. The petition was denied on March 13, 2020.

Supreme Court on July 20, 2020.  (ECF No. 159).  The petition was denied by the Supreme Court on October 5, 2020.  *Garcia v. United States*, 141 S.Ct. 430 (2020).

On September 22, 2021, Garcia filed his § 2255 motion now before the Court.  (ECF No. 160).  The motion asserts three grounds for relief: (1) ineffective assistance of counsel for failure to give a reasonable explanation for why a retest of the drugs was needed, and the failure to object to the drug weight seized and the drug weight tested, which Garcia claims indicates a break in the chain of custody; (2) ineffective assistance of counsel for failing to argue that the *Shepard*[3] documents for his 2008 accomplice to second degree battery conviction were inconclusive; and (3) ineffective assistance of counsel for failing to object to use of his prior state court convictions. *Id*.; ECF No. 163.  The United States responded to the motion on October 27, 2021.  (ECF No. 165).  Garcia filed a reply on November 15, 2021 (ECF No. 168), and with leave of Court, he filed a supplement to his § 2255 motion on January 22, 2022 (ECF No. 169).  As his supplement raised a new ground for relief, that his offense of conviction, i.e., aiding and abetting possession of methamphetamine with intent to distribute, is an inchoate offense and cannot serve as a "controlled substance offense" for career offender purposes, the Government was directed to file a response, which it did on February 8, 2022.  (ECF No. 172).

## II.    DISCUSSION

"A prisoner in custody under sentence ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "If

---

3 *Shepard v. United States*, 544 U.S. 13 (2005).

the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Garcia's § 2255 motion and the files and records of this case conclusively shows that he is not entitled to relief, and the denial and dismissal of his § 2255 motion with prejudice is recommended.

### A.      Timeliness

The Government first argues that Garcia's § 2255 motion should be denied because it was filed outside of the one-year limitation period. (ECF No. 165, pp. 7-11). The Court disagrees.

A one-year period of limitation applies to motions under 28 U.S.C. § 2255. This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

The operative date in this case is "the date on which the judgment of conviction becomes final," as Garcia raises no issue regarding any impediment created by Government action to making his motion, he asserts no right newly recognized by the Supreme Court made retroactive

to cases on collateral review, and he makes no claim based on newly discovered evidence.

Judgment was entered on September 13, 2018. (ECF No. 132). The Eighth Circuit Court of Appeals affirmed in an Opinion issued on December 26, 2019. (ECF No. 157-2). Garcia petitioned for an en banc or panel rehearing, which was denied on March 13, 2020. Order, *United States v. Garcia*, No. 18-3040 (8th Cir. Mar. 13, 2020). Garcia then filed a petition for a writ of certiorari in the United States Supreme Court on July 20, 2020. (ECF No. 159). Citing Sup.Ct.R. 13.1 and Sup.Ct.R. 13.3, the Government contends this filing was untimely because it was made more than 90 days after the denial of his petition for rehearing. (ECF No. 165, pp. 8-9). Then, arguing that an untimely petition for writ of certiorari does not extend the date on which the judgment of conviction becomes final, the Government submits that Garcia's conviction became final on June 11, 2020, which is 90 days after the Eighth Circuit's denial of his petition for rehearing. *Id*. at 9-10. As Garcia's § 2255 motion was filed on September 22, 2021, the Government asserts the motion was filed beyond the one-year limitations period. *Id*. In his reply, Garcia alleges that someone in the Supreme Court Clerk's office told him that he had an automatic extension of six months to file his petition for a writ of certiorari due to COVID-19, and he points out that the Supreme Court did not bar his petition as untimely. (ECF No. 168, pp. 1-2).

Due to COVID-19, the Supreme Court entered an Order on March 19, 2020, extending the deadline to file any petition for a writ of certiorari due on or after the date of the order to 150 days from the date of the lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing. The extension from 90 days to 150 days was later rescinded by Order of the Supreme Court entered on July 19, 2021.

Garcia's timely petition for rehearing was denied by the Eighth Circuit on March 13, 2020, just six days before the Supreme Court's Order extending the filing deadline from 90 days to 150

days.  As such, Garcia had 150 days, or until August 10, 2020, to file a petition for a writ of certiorari with the Supreme Court.  He did so on July 20, 2020, thus his petition for a writ of certiorari was timely filed, and his one-year limitation period to file a § 2255 motion began on October 5, 2020, the date his petition for a writ of certiorari was denied by the Supreme Court. Garcia filed his § 2255 motion on September 22, 2021, which is within the one-year limitation period.

### B.      Standards Applicable to Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission.  *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991).  If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim.  *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

## C.    Failure to Adequately Explain Need for Drug Retesting

Garcia's first ground for § 2255 relief concerns the denial of his motion for retesting drug quantity and purity.  (ECF No. 163, pp. 28-31).  This issue was decided adversely to Garcia on direct appeal, and the record does not support his claim of ineffective assistance of counsel for failing to adequately explain why the retesting was needed.

In his motion for retesting, Garcia asserted "that the quantity and quality of the methamphetamine attributed to [him] is not correct," and "co-defendant Escalante has also stated in open court that the quantity of actual methamphetamine in the sample tested by the DEA was not as pure as the DEA analysis indicated."  (ECF No. 80, p. 1).  Finding that Garcia had not met even the minimal burden to state why the requested retesting was necessary, let alone demonstrate a reasonable probability that it was necessary to aid in his defense and prevent an unfair trial, the motion for retesting was denied.  (ECF No. 83, p. 2).  The Court noted that Garcia did not appear to dispute that the seized substances contained methamphetamine, but only that he disagreed with the weight and/or purity results contained in the DEA chemical analysis report.  *Id*.  The Court then discussed what the retesting would have to show to have any bearing on guilt or innocence on Count Three - Garcia's count of conviction.  *Id*. at 3.  Specifically, the Court observed that the DEA test results for the methamphetamine seized in relation to Count Three indicate a net weight of 55.453 grams at 97% purity, resulting in an actual amount of 53.789 grams of

methamphetamine.  Next, assuming the DEA correctly measured the net weight of the substance, the Court found that the purity on retesting would have to be less than 9.1% methamphetamine to have any bearing on Garcia's guilt or innocence on Count Three.  *Id*.  Further, assuming the DEA correctly measured the purity of the substance, the Court found that the net weight on retesting would have to be less than 5.15 grams to have any bearing on guilt or innocence on Count Three. *Id*.  The Court also commented that Garcia had submitted no evidence "that the DEA did not accurately test the seized methamphetamine, or that the DEA tested incorrect samples, or of similar circumstances," but rather, that the only basis given for retesting was Garcia's "subjective and conclusory belief that the methamphetamine he is accused of distributing was less pure or weighed less than the Government now charges."  *Id*. at 3-4.  The Court concluded its reasoning by stating:

> "The difference between the DEA results and what the retesting results would have to be before retesting would aid in defense or be necessary for a fair trial is so profound that some other basis than Defendant's conclusory disagreement is necessary before the Court will appoint an expert and authorize funds."  *Id*. at 4.

The Eighth Circuit affirmed on direct appeal.  (ECF No. 157-2).  Referring to its opinion in co-defendant Escalante's appeal,[4] the Eighth Circuit noted that the motion for retesting was based "entirely on his subjective belief that the stated drug purity was incorrect, evidently formed from his first-hand knowledge as an admitted methamphetamine user who had tried the drugs." Since a trial court need not authorize an expenditure under 18 U.S.C. § 3006A(e) for a "fishing expedition," the Eighth Circuit found no prejudice where the motion for retesting did not set forth "an adequate basis - such as claims of issues with chain of custody or previous issues of reliability with the lab that performed the testing – to suggest that the lab results were inaccurate."  *Id*.

"It is well settled that claims which were raised and decided on direct appeal cannot be

---

4 See ECF No. 158-2 in Case No. 2:17-cr-20024-PKH-1.  *United States v. Escalante*, 946 F.3d 410 (8th Cir. 2019).

relitigated on a motion to vacate pursuant to 28 U.S.C. § 2855." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)). *See also United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005) ("we find the present claim to be the same claim in different clothes, and we will not reconsider the issue on collateral review"); *Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring opinion) ("[s]ince *Kaufman*[5] federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal"); *Loc Huu Bui v. United States*, 2014 WL 582954, at p. 8 (E.D.N.C. 2014) ("a petitioner may not circumvent an adverse ruling on direct appeal by recasting it as an ineffective assistance of counsel claim"); and, *Dowdell v. United States*, 859 F.Supp.2d 176, 179 (D.Mass. 2012) ("[i]t is settled law that a petitioner may not revive claims already decided on direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition").

By blaming defense counsel for failing to adequately explain the need for retesting, Garcia has merely recast his claim as one of ineffective assistance of counsel. He may not do so, and the claim is barred in this § 2255 proceeding.

In addition to being barred as an issue raised and rejected on direct appeal, the record simply does not support Garcia's current claim of ineffective assistance of counsel. Aside from renewing his argument about the purity of the drugs, which was specifically addressed and rejected by the Eighth Circuit, the only other explanations for retesting now given by Garcia are his assertions that (1) the lab report has a case number that has been redacted, and (2) the difference in drug weight seized and drug weight tested suggests a break in the chain of custody. (ECF No. 163, p. 28). He says the lab report shows a gross weight of 87.2 grams on the date accepted by the

---

5 *Kaufman v. United States*, 394 U.S. 217 (1969).

16

laboratory, but that the drug weight seized in connection with Count Three of the Superseding Indictment was only 55.453 grams of methamphetamine, resulting in an "insufficient showing of chain of custody" of the drugs seized and even "tampering with evidence." *Id*. at 29-30. An examination of the lab report, however, does not clearly reflect 87.2 grams as the drug weight received by the lab. (ECF No. 163-1, p. 2). Admittedly, the legibility of this lab report, an exhibit attached to Garcia's supporting brief, is not entirely clear, as it appears printer ink has bled onto the paper. While possibly being 87.2 grams as Garcia asserts, the "8" is blurry and it is equally possible that the lab report reflects a gross weight, including packaging, of 57.2 grams, with the "5" having bled and blurred into an "8." The lab report does clearly show, however, the net weight of the drugs, 55.453 grams, which is consistent with the charge in Count Three. And as noted by the Court in its denial of Garcia's motion for retesting, "[t]he difference between the DEA results and what the retesting results would have to be before retesting would aid in defense or be necessary for a fair trial is so profound that some other basis than Defendant's conclusory disagreement is necessary before the Court will appoint an expert and authorize funds." (ECF No. 83, p. 4). Given the state of the record, the undersigned cannot conclude that Garcia's new explanation, if it was ever called to counsel's attention by Garcia, would have been successful in supporting his motion for retesting. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

     Garcia's first ground for relief should be denied.

### D.    Failure to Challenge *Shepard* Documents for 2008 Prior Conviction

     Garcia's second ground[6] for relief is his claim of ineffective assistance of counsel for

---

6 Garcia's § 2255 motion lists this as his second ground for relief, but it is argued first in his supporting brief.

failing to argue that the *Shepard* materials for his 2008 conviction "were inconclusive," and in failing to challenge the Court's application of the modified categorical approach to the wrong statute, Ark. Code Ann. § 5-13-202 instead of Ark. Code Ann. § 5-2-403(a)(1). (ECF No. 160, p. 5; ECF No. 163, p. 10). The underlying issue—the propriety of using Garcia's 2008 conviction for Accomplice to Battery in the Second Degree for career offender purposes—has already been decided adversely to Garcia by the Eighth Circuit on direct appeal and is barred in this § 2255 proceeding.

In his Sentencing Memorandum, Garcia objected to the use of his 2008 conviction for Accomplice to Battery in the Second Degree as a predicate for career offender enhancement, arguing that it is not a "crime of violence" under U.S.S.G. § 4B1.2 due to the inchoate nature of the offense. (ECF No. 124, p. 9). He focused on the definition of an accomplice, set forth in Ark. Code Ann. § 5-2-403, then argued that § 4B1.2 requires the prior offense to include actual use, attempted use or threatened use of force, and that this prior conviction does not meet that requirement. *Id*. His argument ignored the statute for the underlying offense for which he was convicted as an accomplice, Ark. Code Ann. § 5-13-202, Battery in the Second Degree.

The Court addressed Garcia's objection and argument at sentencing. Recognizing that Ark. Code Ann. § 5-13-202 includes, as an element for which a person may be convicted, a mental intent of recklessness as opposed to a purposeful intent, and that the Eighth Circuit had previously held that battery in the second degree in Arkansas is not categorically a crime of violence, the Court found the statute to be divisible, and it employed the modified categorical approach to determine whether or not Garcia's conviction was based on purposeful intent as opposed to reckless intent. (ECF No. 152, pp. 51-52). Looking at the charging document, the Court concluded that Garcia had been charged with the intent element of purposeful conduct, so the conviction was

determined to be a crime of violence under the Guidelines.  *Id*. at 52.  The Court also found that accomplice liability would be treated the same as for the underlying offense under the Guidelines. *Id*. at 55.

On appeal, Garcia again argued that his conviction as an accomplice to second degree battery under Arkansas law cannot qualify as a crime of violence for purposes of career offender enhancement because it does not have as an element "the use, attempted use, or threatened use of physical force," as required by the force clause in § 4B1.2(a).  (ECF No. 157-2, p. 5).  The Eighth Circuit noted it had previously held that Ark. Code Ann. § 5-13-202(a) is not categorically a crime of violence,[7] and that the statute is divisible, necessitating application of the modified categorical approach to determine whether a conviction under the statute is a crime of violence.[8]  *Id*.  Turning to the language in the Felony Information[9] underlying Garcia's conviction, which included "with the purpose of causing physical injury to another person, [the defendants] caused serious physical injury to any person … [by] str[iking] and kick[ing] another causing a fractured orbital socket and pallet," the Eighth Circuit found that such language tracks the essential language of Ark. Code Ann. § 5-13-202(a)(1), which provides that "[a] person commits battery in the second degree if … [w]ith the purpose of causing physical injury to another person, the person causes serious physical injury to another person."  *Id*.  The Eighth Circuit was, therefore, satisfied "that the record of conviction demonstrates Garcia was convicted for a violation of Ark. Code Ann. § 5-13-202(a)(1), which includes as an element the use of physical force."  *Id*.

The Eighth Circuit also discussed Garcia's contention that accomplice liability is not

---

7 *United States v. Dawn*, 685 F.3d 790, 795 (8th Cir. 2012).
8 *United States v. Rice*, 813 F.3d 704, 705 (8th Cir. 2016).
9 Designated by the district court as Court Exhibit No. 1, this Felony Information was transmitted to the Eighth Circuit Court of Appeals and was received and filed on November 9, 2018.  See docket entry on November 9, 2018, in *United States v. Jose Garcia*, Case No. 18-3040.

included in § 4B1.2's definition of "crime of violence," requiring reliance on the Note 1 commentary to encompass accomplice liability within § 4B1.2.[10]  (ECF No. 157-2, p. 6).  This argument was rejected as the Eighth Circuit recognized its earlier decisions[11] "that this commentary 'is a reasonable interpretation of the career offender guidelines that is well within the Sentencing Commission's statutory authority.'"  *Id.* at 4, 6.  No error was found in the district court's finding that Garcia's prior conviction for accomplice to second degree battery was a crime of violence for purposes of career offender enhancement.

Despite the pages devoted to it in his supporting brief, Garcia's claims of ineffective assistance of counsel on this issue provide no basis to relitigate the issue in this § 2255 proceeding. His argument looks only to the statute defining accomplice culpability, ignoring the underlying criminal offense of second-degree battery, and he incorrectly asserts that he did not plead guilty to second degree battery under § 5-13-202, but only to being an accomplice under § 5-2-403(a)(1). (ECF No. 163, p. 12).  As both this Court and the Eighth Circuit pointed out, the Felony Information clearly charged Garcia with purposeful conduct to cause physical injury to another person under § 5-13-202(a)(1), and the Judgment and Commitment Order (ECF No. 124-1) very clearly states the offense of conviction as being in violation of "5-13-202 + 5-2-403[,] Battery 2nd (Accomplice)."  Garcia cannot simply excise the underlying offense of second-degree battery from his accomplice culpability for it.  The record is not, as he claims, inconclusive.

Garcia also states, "[e]ven if the underlying 2nd battery offense is considered to be elements of the accomplice offense, culpability for the battery is not attributed to the accomplice or accessory defendant."  (ECF No. 163, p. 21).  He cites no legal authority for this proposition, and

---

10 U.S.S.G. § 4B1.2 cmt. n. 1.
11 *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995) (en banc); *United States v. Walterman*, 343 F.3d 938, 941 (8th Cir. 2003).

it is contrary to established Arkansas law.  He suggests that merely promoting or facilitating the commission of the underlying offense is somehow detached from the actual commission of the underlying offense.  It is not.  Under Arkansas law, "[w]hen two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both; *Arkansas law makes no distinction between the criminal liability of a principal and an accomplice*."  *Wilson v. State*, 2016 Ark. App. 218, at *6, 489 S.W.3d 716, 719-20 (internal citation omitted) (emphasis added); *Flowers v. State*, 2020 Ark. App. 29, at *3, 593 S.W.3d 488, 490.

Not only is this claim barred because it was previously decided adversely to Garcia on appeal, but it would have been futile for defense counsel to make the arguments Garcia now asserts. And, as previously stated, defense counsel cannot be faulted for failing to make a meritless argument.  *Larson*, 905 F.2d at 219; *Rodriguez*, 17 F.3d at 226.

Accordingly, Garcia's second ground for relief should be denied.

### E.      Failure to Object to Prior State Convictions

Garcia's third ground for relief asserts ineffective assistance of counsel for failure to object to a prior State conviction for aiding and abetting, which he claims is not reported in the PSR or on his record, and failure to object to two predicate offenses that went uncounseled.  (ECF No. 160, p. 7).  His argument is disjointed and scattered: he says he does not have a previous conviction for aiding and abetting; he asserts double counting; he argues that his prior conviction in 2008 for possession of marijuana with intent to deliver is not a controlled substance offense for purposes of career offender enhancement; he faults his counsel for not discovering that his prior conviction was uncounseled; and he claims that his two predicate offenses for career offender enhancement should have been consolidated because there was no intervening arrest.  (ECF No. 163, pp. 32-36).  His claims are not supported by the record and lack merit.

### 1.  No Prior Conviction for Aiding and Abetting

It is unclear what Garcia's argument regarding the failure to object to a previous State conviction for aiding and abetting relates to.  Neither of the predicate offenses used to support his career offender enhancement are for aiding and abetting in the commission of the underlying offenses.  (ECF No. 121, ¶¶ 41, 56, 58).  And his counsel did argue at sentencing and on direct appeal that his instant offense, aiding and abetting in the distribution of five grams or more of methamphetamine, was an inchoate offense that does not qualify as a "controlled substance offense" under the Guidelines.  (ECF No. 124, pp. 4-8; ECF No. 152, pp. 49-51; ECF No. 157-2, pp. 4-5).  That argument was rejected at sentencing and on direct appeal.  Counsel is not ineffective simply because his arguments ultimately are unsuccessful.  *James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996).

### 2.  No Double Counting

There was also no double counting, "once for the instant offense and second for a prior state conviction predicate offense under [§] 4B1.1 which [Garcia] does not have on his record or P.S.I." (ECF No. 163, p. 33).  It appears Garcia's confusion on this point emanates from the Eighth Circuit's Opinion construing his argument to be "that his *previous* aiding and abetting distribution of methamphetamine conviction is not a controlled substance …," instead of the argument relating to his instant offense of conviction.  (ECF No. 157-2, p. 4) (emphasis added).  Nonetheless, the Eighth Circuit's analysis of whether aiding and abetting in the distribution of methamphetamine is a controlled substance offense for purposes of career offender enhancement is the same, and there was no error in finding the instant offense of conviction, aiding and abetting in the distribution of more than five grams of actual methamphetamine, to be a controlled substance offense under the Guidelines.

22

### 3.   2008 Prior Conviction Was Not for Simple Possession

Garcia next argues that his 2008 Washington County, Arkansas conviction for possession of marijuana with intent to deliver was only a possessory offense and not a controlled substance offense for purposes of career offender enhancement.  (ECF No. 163, pp. 33-36).  This argument finds no support in the record and otherwise lacks merit.

Garcia's 2008 conviction in Washington County, Arkansas was not for simple possession of a controlled substance, but for possession with intent to deliver the controlled substance.  (ECF Nos. 121, ¶ 56; 165-1, 165-2).   U.S.S.G. § 4B1.2(b) defines the term "controlled substance offense" to include "the possession of a controlled substance … with intent to … distribute, or dispense."  The Eighth Circuit has made clear that a prior conviction for possession of a controlled substance with intent to deliver, in violation of Ark. Code Ann. § 5-64-401(a), qualifies as a controlled substance offense.  *United States v. Meux*, 918 F.3d 589, 591 (8th Cir. 2019); *United States v. Howard*, 670 F. App'x 914, 915 (8th Cir. 2016) (unpublished); *United States v. Jones*, No. 4:14-CR-00194 BSM, 2018 WL 10124885, at *3 (E.D. Ark. Aug. 27, 2018).

Had Garcia's counsel advanced his "simple possession" argument, it would have been without merit, and there can be no ineffective assistance of counsel for failing to make a meritless argument.  *Larson*, 905 F.2d at 219; *Rodriguez*, 17 F.3d at 226.

### 4.   2008 Prior Conviction Was Not Uncounseled

Garcia also asserts that his counsel was ineffective for failing to discover that his 2008 prior conviction was uncounseled.  (ECF No. 163, pp. 34, 36).  He offers no factual basis for this assertion other than his own self-serving allegations.  The record, on the other hand, shows that "defendant was represented by counsel" (ECF No. 121, ¶ 56), and the Judgment and Commitment Order (ECF No. 165-1, p. 1) reflects that Garcia was represented by B. Schlegel, a public defender.

Once again, there can be no ineffective assistance from counsel's failure to make a meritless argument. *Larson*, 905 F.2d at 219; *Rodriguez*, 17 F.3d at 226.

### 5.   Prior Convictions Were Not Consolidated

Lastly, Garcia states that his prior conviction for possession of marijuana with intent to deliver "is consolidate (sic) with the other predicate offense in paragraph 58 accomplice to battery because there was no intervening arrest." (ECF No. 163, p. 36). This argument is also undermined by the record and has no basis in fact.

Garcia's conviction for possession of marijuana with intent to deliver arose from his arrest on September 28, 2007. (ECF No. 121, ¶ 56). His conviction for being an accomplice to second degree battery resulted from events on March 2, 2008 (*Id.*, ¶ 58), a date *after* Garcia had already pled guilty to the possession of marijuana with intent to deliver charge on January 10, 2008. (ECF No. 165-1, p. 1).

Garcia's third ground for relief should be denied.

### F.      Offense of Conviction Not a Controlled Substance Offense

Although he made the claim at sentencing and on direct appeal, Garcia did not initially include as a ground for § 2255 relief his argument that his offense of conviction, aiding and abetting in the distribution of more than five grams of actual methamphetamine, is an inchoate offense and cannot serve as a "controlled substance offense" for career offender purposes. He did so in a Supplement filed on January 10, 2022. (ECF No. 169).

This claim was squarely decided against Garcia on direct appeal, and he cannot raise it again in this § 2255 proceeding. Claims that were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255. *United States v. Lee*, 715 F.3d 215, 224 (8th Cir. 2013) (internal citations omitted); *see also Woods v. United States*, 567 F.2d 861,

863 (8th Cir. 1978) (citing *Scott v. United States*, 545 F.2d 1116, 1117 (8th Cir. 1976)) (claims previously litigated and decided adversely to a criminal defendant may not be re-litigated in a § 2255 proceeding).

### III.    NO EVIDENTIARY HEARING IS WARRANTED

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).   Such are the circumstances in this case where the record conclusively shows that Garcia's claims are not cognizable under § 2255 and otherwise lack merit.

### IV.    NO CERTIFICATE OF APPEALABILITY IS WARRANTED

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case.  *Slack v. McDaniel*, 529 U.S. 473 (2000).  Garcia has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### V.    CONCLUSION

For the reasons and upon the authorities discussed above, Garcia's grounds for relief have been previously decided adversely to him on direct appeal and are not cognizable in this § 2255 proceeding and are otherwise unsupported by the record in this case.

It is recommended that Garcia's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 160) be **DISMISSED with**

PREJUDICE.

It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of March 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE